UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CONSTANCE FLORES,

                Plaintiff,

-against-

DEPARTMENT OF HOMELESS SERVICES;
NEIGHBORHOOD ASSOCIATION OF
INTER-CULTURAL AFFAIRS; CASA DE
CARINO,

                Defendants.

24-CV-6673 (LLS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

---

LOUIS L. STANTON, United States District Judge:

    Plaintiff, who resides in a transitional housing facility (THF), is appearing *pro se*. She challenges policies that she alleges are imposed by the New York City Department of Homeless Services (DHS), including a curfew policy requiring permission for overnight stays outside of the THF, and a policy that decreases cash assistance benefits for those in a THF. She brings claims, under 42 U.S.C. § 1983, for alleged violations of her rights under the United States Constitution, as well as claims under the New York State Constitution and other state laws. By order dated February 10, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis*, that is, without prepayment of fees.

## STANDARD OF REVIEW

    The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

## BACKGROUND

The following allegations are drawn from Plaintiff's amended complaint.[1] Plaintiff was "forced out" of her apartment because neighbors "scapegoat[ed] her as an odor and noise nuisance." (ECF 6 at 4.) On March 17, 2024, Plaintiff was referred to Casa de Carino, a THF operated by the Neighborhood Association for Inter-Cultural Affairs (NAICA). Plaintiff contends that the DHS requires Casa de Carino and other THFs to adopt the following policies: (1) curfew is 11 p.m.; (2) residents must sleep in the facility unless staff, in their discretion, issue an "overnight pass"; and (3) a portion of public assistance benefits is paid to Casa de Carino.[2]

Plaintiff alleges that, during her stay at Casa de Carino, she was denied an "overnight pass" or "late pass" twice in July 2024. On July 13, 2024, Plaintiff was denied an overnight pass or late pass to spend time with her mother and sister visiting from Georgia. On July 27, 2024, Plaintiff was denied an overnight or late pass to attend a family reunion. She was also denied

---

[1] On September 4, 2024, Plaintiff filed an amended complaint, as of right. (ECF 6.)

[2] It is ambiguous from Plaintiff's amended complaint whether her public benefit award is lower because of her housing arrangement, or whether it is effectively lower because some portion of it is paid directly to the THF instead of being paid to her.

overnight passes "on multiple occasions" for work and family emergencies, and she alleges that other residents were similarly denied such passes. Plaintiff contends that this constitutes "an unlawful detainment of plaintiff and shelter homeless, without due process," in violation of the Fourteenth Amendment to the U.S. Constitution. (*Id.* at 3.)

Moreover, prior to residing in the THF, Plaintiff received $91.50 in cash assistance every two weeks and $107.50 every two weeks in rental assistance. After entering the THF, Plaintiff's cash assistance was reduced to only $11 per week. Plaintiff attaches an excerpt of a document which describes the client contribution requirement, stating that "HRA will determine the amount, if any, that you must contribute toward the cost of your shelter." (*Id.* at 94.) Plaintiff asserts that the drastic reduction in public assistance makes it extremely hard to meet basic living expenses, such as purchasing a weekly Metro Card or toiletries. Although toiletries are supposed to be available from the THF, in reality, necessities such as soap and toilet paper are often in short supply. Plaintiff contends that this decrease in her public benefits violates her constitutional "Right of Privacy," which she argues prohibits governments from "interfering in the lives of citizens." (*Id.* at 3.)

Plaintiff also contends that the living conditions at Casa de Carino are "deplorable," including an unclean bathroom (clogged drain, lacking soap, mold and mildew), insufficient heat and air conditioning, and abusive residents. (*Id.* at 6, 8.) Residents are required to leave during certain periods (even when it is raining outside), and must be accompanied by an aide to use washer and dryers or access toiletries. (*Id.* at 6.) Dorm rooms at Casa De Carino are ice cold, with inconsistent steam heat, and for three days during spring 2024, the HVAC system was blowing cool air into already unheated rooms. In May 2024, as outside temperatures began to

3

rise, Plaintiff and other clients are forced to sleep in excessively warm dorm rooms due to non-working HVAC.

Plaintiff sues the two nonprofit organizations, NAICA and Casa De Carino, as well as DHS. She asserts claims under Section 1983 for violations of her rights under the Fourteenth Amendment, as well as state law claims of harassment, breach of contract, negligence, negligent infliction of emotional distress, and other torts. Plaintiff seeks damages, a declaration that her Fourteenth Amendment rights were violated, and injunctive relief regarding conditions at THFs (such as testing for asbestos and lead testing, and installing air conditioning).

## DISCUSSION

**A.    Claims against private facilities NAICA and Casa de Carino**

To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). A claim for relief under Section 1983 thus must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

In analyzing whether a private entity is functioning as a state actor for the purpose of Section 1983, a court must first "identify[ ] the specific conduct of which the plaintiff complains, rather than consider the general characteristics of the entity." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (internal quotation marks and citation omitted). A private entity's activities

4

may be considered state action: (1) when the entity acts using the coercive power of the State or is controlled by the State (the "compulsion test"); (2) when the State provides significant encouragement to the entity, the entity willfully participates in joint activity with the State, or the entity's functions are entwined with State policies (the "joint action" or "close nexus" test); or (3) when the State has delegated a public function to the entity (the "public function" test). *Id.* at 207 (citation omitted). The fundamental question under each test is whether the private entity's challenged actions are "'fairly attributable'" to the State. *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Courts have held that "[t]he provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors." *Williams v. B.R.C. of New York*, No. 25-CV-0663, 2025 WL 446237, at *2 (E.D.N.Y. Feb. 10, 2025) (internal quotation marks and citation omitted); *Smith v. Westhab Traverse House*, No. 24-CV-4961 (LTS), 2025 WL 26067, at *3 (S.D.N.Y. Jan. 2, 2025) (Westhab shelter and employees not state actors); *Levine v. Project Renewal*, 24-CV-0616 (LTS), 2024 WL 773722, at *5 (S.D.N.Y. Feb. 26, 2024) (Project Renewal not a state actor); *Cora v. Shelter*, No. 24-CV-0328, 2024 WL 308248, at *3 (E.D.N.Y. Jan. 26, 2024) (Westhab and its employees not state actors); *Syville v. City of New York*, No. 22-CV-8009 (LTS), 2023 WL 8258020, at *6 (S.D.N.Y Nov. 29, 2023) (noting that Help USA is a private social-services organization that operates a homeless shelter funded by the City of New York, and that its employee is not a state actor); *Hill v. N.Y.C. Shelter Sys.*, No. 1:22-CV-7350 (LTS), 2023 WL 2143641, at *2 (S.D.N.Y. Feb. 17, 2023) (VOA employees not state actors).

Defendants NAICA and Casa de Carino are private non-profit entities, and in providing transitional housing to Plaintiff, these defendants are not engaged in state action. Plaintiff's

5

Section 1983 claims against Defendants NAICA and Casa de Carino must therefore be dismissed for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.     Claims against DHS**

Plaintiff's claims against the New York City DHS must also be dismissed. In federal court, an entity's capacity to be sued is generally determined by the law of the state where the court is located. *See* Fed. R. Civ. P. 17(b)(3); *Edwards v. Arocho*, 125 F.4th 336, 354 (2d Cir. 2024) ("A plaintiff cannot bring a claim against a municipal agency that does not have the capacity to be sued under *its municipal charter*." (emphasis in original)). Under New York City's municipal charter, agencies of the City of New York cannot be sued in the name of the agency, unless the agency has been granted that capacity. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."). The New York City Charter does not grant DHS the capacity to sue and be sued in the name of the agency. *See* N.Y. City Charter ch. 24, § 612 (discussing the powers and duties of DHS). Because DHS lacks the capacity to be sued in the name of the agency, Plaintiff's claims against DHS must be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

Even if the Court were to construe the complaint as asserting claims against the City of New York, Plaintiff's allegations fail to state a claim for a violation of her constitutional rights. When a plaintiff sues a municipality such as the City of New York under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under . . . section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such

6

deprivation.") (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 692 (1978)). In other words, to state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012).

Plaintiff challenges two policies of the City of New York's DHS: (1) a curfew policy that permits overnight and late passes, with discretion to partner facilities whether to grant these, which Plaintiff contends violates her constitutional rights to due process, family integrity, and privacy; and (2) a policy requiring THF residents to contribute a significant portion of their public assistance benefits toward shelter costs, allegedly in violation of Plaintiff's constitutional rights "to privacy and to public assistance."

### 1.     Curfew policy

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend XIV, § 1. Where a plaintiff sues a defendant "to enforce procedural due process rights, a court must determine (1) whether a [liberty or] property interest is implicated, and if it is, (2) what process is due before the plaintiff may be deprived of that interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (citation omitted). Plaintiff suggests that the DHS curfew infringes two potential liberty interest: the interest in being with her family and the interest in being free from unlawful detention.

The right of family integrity is a liberty interest protected by the procedural due process protections of the Fourteenth Amendment. *See Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012). "Parents have a constitutionally protected liberty interest in the care, custody and management of their children, and children have a parallel constitutionally protected liberty interest in not being dislocated from the emotional attachments that derive from the intimacy of

7

daily [family] association." *Kia P. v. McIntyre*, 235 F.3d 749, 759 (2d Cir. 2000) (quotation marks and citations omitted).

Plaintiff's allegations that when her family members visited, she was required to return to her THF by the 11:00 p.m. curfew that DHS imposes on its partners, and that she could not spend the evening with her extended family, are insufficient to allege an infringement of the right to family integrity. Because Plaintiff was free to cease living in the THF and return to live with her family, her allegations do not show that "the coercive power of the State" was used to separate her from her family and dislocate these emotional attachments. *Kia P*, 235 F.3d at 759. The fact that remaining at the THF required Plaintiff to forego late evenings with her family members does not deprive Plaintiff of an interest protected by the United States Constitution. Plaintiff's allegations that she was denied overnight passes thus fail to state a claim on which relief can be granted for a violation of her rights under the Due Process Clause.

Plaintiff's allegations that the curfew constitutes unlawful detention also fail to state a Section 1983 claim for a violation of her constitutional rights. Courts look to state law as a starting point for constitutional torts.[3] Under New York law, a false imprisonment claim requires a plaintiff to establish that

> (1) the defendant intended to confine the plaintiff; (2) the plaintiff was aware of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged, such as by virtue of a warrant or probable cause.

---

[3] "[T]o flesh out the elements of this constitutional tort, we must look for 'tort analogies.'" *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 378 (2017) (Alito, J., *dissenting*); s*ee also Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018) (holding that common law principles are meant simply to guide rather than to control the definition of Section 1983 claims and courts should not "mechanically apply" the law of New York State), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022).

*King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997).

Plaintiff voluntarily entered Casa de Carino and is free to leave the THF at any time. *See, e.g., Fernandez v. State of New York*, No. 100305, 2002 WL 31955397, at *4 (N.Y. Ct. Cl. Dec. 3, 2002) (holding that "the third element of this [false imprisonment] tort, that a claimant did not consent to the confinement, was not satisfied when a plaintiff voluntarily accompanied a defendant's employees to a security office to discuss the potential criminality"). Although Plaintiff may feel that her circumstances have left her without other good options, participants can be required to follow THF's rules while remaining there, and she has not alleged facts showing that the rule itself violates her right to family integrity or other constitutional rights. Plaintiff's allegations about the curfew policy are thus insufficient to allege that she was subjected to involuntary confinement without consent and do not state a claim for false imprisonment, under state law or Section 1983.

Plaintiff might be understood as challenging the allegedly arbitrary way in which Casa de Carino staff decided whether to award late or overnight passes. Unless Plaintiff had some constitutionally protected liberty or property interest in such a pass, such allegations do not state a claim of constitutional dimension. *See Nnebe*, 644 F.3d at 158 (holding that Due Process claims requires court to first determine "whether a [liberty or] property interest is implicated").

### 2. Diminution of public assistance benefits

Plaintiff contends that her public assistance benefits have been reduced during her stay in a THF. New York State Social Services Law establishes the "schedule of monthly grants and allowances" for public assistance, including the shelter allowance. N.Y. Soc. Serv. Law § 131-a(2); *see also* N.Y. Comp. Codes R. & Regs. tit. 18, § 352.3 ("Each social services district must provide a monthly allowance for rent in the amount actually paid, for cases with a verified rental obligation."). If Plaintiff is arguing that her public assistance allowances were improperly

calculated under state and local law in light of her current housing arrangements, she must pursue her administrative remedies and then can seek judicial review of a final administrative decision in an Article 78 petition in the Supreme Court of the State of New York. *See*, *e.g.*, *Rodriguez v. Wing*, 94 N.Y.2d 192 (N.Y. 1999) (Article 78 proceeding seeking review of determination that DSS could legally require recipient to use portion of disability benefits to contribute to cost of shelter).

Plaintiff argues, in addition or instead, that DHS deprives her of property in violation of the Fourteenth Amendment by adopting and enforcing policies that diminish her public assistance benefits due to her residency in a THF. The Supreme Court has explained the criteria for a protected property interest:

> [T]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . . Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *see also Rodriguez v. McLoughlin*, 214 F.3d 328, 338 (2d Cir. 2000) ("To create a liberty interest, a statute or regulation must 'contain 'explicitly mandatory language.'")

Here, Plaintiff alleges that state law does *not* provide her with an entitlement to retain the shelter portion of her public benefits while she resides in a THF. Plaintiff thus cannot allege that she had a property interest, protected under the Due Process Clause, in retaining the shelter portion of public benefits because she does not have a claim of entitlement to that benefit amount under state law when she is in a THF. Plaintiff's allegations about diminution of her public benefits thus do not state a claim, under Section 1983, for a violation of her constitutional right to due process. Accordingly, even if Plaintiff's claims against DHS were construed as being

asserted against the City of New York, Plaintiff's allegations about these policies fails to state a claim under Section 1983 on which relief can be granted.

**C.     State Law Claims**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))). Plaintiff's state law claims are therefore dismissed without prejudice.

**LEAVE TO AMEND**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). The Court grants Plaintiff 30 days' leave to amend her complaint to detail her claims, if she believes that she can state a claim under the standards articulated above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

Plaintiff's claims under 42 U.S.C. § 1983 are dismissed, 28 U.S.C. § 1915(e)(2)(B)(ii), and the Court declines supplemental jurisdiction of Plaintiff's state law claims, 28 U.S.C. § 1367(c)(3). The Court grants Plaintiff leave to file an amended complaint within 30 days.

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   September 15, 2025
        New York, New York

                                                            *Louis L. Stanton*
                                                                Louis L. Stanton
                                                                      U.S.D.J.